## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **JOSÉ DAVILA, et al.,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **No. 3:10cv366-FM** |
| | § | |
| **UNITED STATES, et al.,** | § | |
| *Defendants.* | § | |

### Plaintiffs' Response in Opposition to
### Defendant United States' Motion to Dismiss and for Summary Judgment

NOW COME Plaintiffs in response to Defendant United States' Motion to Dismiss & For Summary Judgment [hereinafter "U.S. Mot."]. For the reasons set forth below, dismissal is improper at this time and the Court should deny Defendant's requests. Alternatively, Plaintiffs seek leave where indicated and appropriate to conduct the discovery necessary to address Defendant's requests for dismissal.

I.      **CASE SUMMARY**

This case arises out of two incidents involving federal law enforcement officials and Plaintiffs Jose Davila and Marcela Duarte. Plaintiffs' facts describing improper conduct by the United States are recited in detail in their Complaint and declarations accompanying this Motion.

Plaintiffs filed suit against the United States seeking redress for the tortious conduct against them pursuant to the Federal Tort Claims Act ("FTCA") and against various individual Rangers for constitutional violations pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 (1971). On May 2, 2001, the United States and the Individual Rangers filed separate motions to dismiss. (Doc. Nos. 27, 28). This is the first

appearance by all Defendants.  No defendant has answered, and the parties have yet to engage in full Rule 26 conference.[1]

## II.     STANDARDS

### A.  Motions to Dismiss pursuant to FRCP Rules 12(b)(1) and 12(b)(6)

The standard of review is the same for motions to dismiss pursuant to FRCP Rules 12(1) and 12 (b)(6).  *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).  In general, motions to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) are disfavored.  *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d. 161, 164 (5th Cir. 1999) (citations omitted).  To survive a motion to dismiss, a complaint need only contain sufficient facts to "state a claim for relief that is plausible on its face." *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133 (5th Cir. 2009), citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  All facts asserted in the complaint must be accepted as true.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In deciding a motion to dismiss under Rule 12(b)(1), the Court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).  The Court, however, must "avoid tackling the merits under the ruse of assessing jurisdiction." *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) citing *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980).

Moreover, a motion to dismiss brought pursuant to Rule 12(b)(1) must be treated as a motion for summary judgment if facts outside the pleadings are considered.  *Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. May 1981); *Clark v. Tarrant County*, 798 F.2d 736, 741-

---

[1] The parties did confer prior to submitting the proposed scheduling order.

42 (5th Cir. 1986) ("Where the challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, . . . the district court should find that it has jurisdiction over the case and deal with the defendant's challenge as an attack on the merits."). If a motion to dismiss for lack of subject matter jurisdiction presents factual issues then a continuance is proper to permit the Plaintiffs a period of reasonable discovery. *McAllister v. FDIC*, 87 F.3d 762, 766 (5th Cir. 1996); *Williamson*, 645 F. 2d at 404.

### B. Summary judgment

Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party must show that "there can be but one reasonable conclusion as to the verdict . . . if reasonable minds could differ as to the import of the evidence, a verdict should not be directed." *Anderson*, 477 U.S. at 250-51. When determining whether there is a dispute as to any material fact, the court considers all evidence in the record, but does not weigh the evidence or make credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). Instead, the *facts and inferences* to be drawn from those facts are viewed in the light most favorable to the nonmoving party, in this case, the Plaintiffs. *Wyatt v. Hunt Plywood Co.,* 297 F.3d 405, 409 (5th Cir. 2002) (emphasis added).

The non-moving party can defeat a motion for summary judgment by showing that the evidence tendered by the moving party is itself laced with contradictions of fact. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991), citing, *Isquith for and on behalf of*

3

*Isquith v. Middle South Util., Inc.*, 847 F.2d 186, 198 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). Likewise, summary judgment is inappropriate if an issue depends upon the credibility of a witness, because credibility can best be determined after the trier of fact observes the witness's demeanor. *Magill v. Gulf & Western Ind., Inc.*, 736 F.2d 976, 979 (4th Cir. 1984) citing *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *see also Thomas v. Great Atl. & Pac. Tea Co.* 233 F.3d 326, 329-32 (5th Cir. 2000). Questions of intent and state of mind are also usually inappropriate for summary judgment, because it is particularly difficult for the non-moving party to challenge the self-serving testimony of the moving party without the benefit of trial accessories, namely cross-examination. *Int'l Shortstop, Inc.*, 939 F.2d at 1265.

## III.   THE COURT SHOULD DENY DEFENDANT UNITED STATES' REQUEST TO DISMISS PLAINTIFF DAVILA'S CLAIMS ASSOCIATED WITH FIRST INCIDENT.

The United States seeks to avoid liability from Plaintiff Davila's claims of false imprisonment and intentional infliction of emotional distress ("IIED"). In so doing, Defendant also attempts to recast Mr. Davila's tort claims as arising out of the "detention of goods," namely the truck in which Mr. Davila was a passenger and was later used by his son, Tocho Davila, to flee the checkpoint. Not only does the United States improperly state the basis of Mr. Davila's claim, it also presents an incomplete legal analysis of the FTCA.

### A. Plaintiff Davila's claims for false imprisonment and IIED are not barred by the detention of goods exception to the FTCA.

On January 7, 2009, Plaintiff Davila was a passenger in a white pick-up truck along with his son, Tocho, and his son's girlfriend, Yesenia Mata. Although information provided by the United States in response to a FOIA request is incomplete, it confirms Plaintiff Davila's assertion that, at all times during the events of that day, he complied with Border Patrol agents' requests by stopping at the checkpoint, agreeing to wait for the canine unit, and remaining at the

scene. *See* Ex. A, *Border Patrol Report of Apprehension*; Ex. B, *Declaration of Jose R. Davila* ¶¶ 32-44. Indeed, the United States' evidence is void of even a suggestion that Plaintiff Davila was illegally present in the United States, possessed illegal materials, or engaged in or was ~~suspected of any criminal activity whatsoever.~~

Nevertheless, *after* Tocho fled the checkpoint, Mr. Davila was separated from Ms. Mata, and placed in a holding cell. There a Border Patrol agent attempted to coerce him into signing a false statement regarding the alleged criminal conduct of his son, which Davila refused to do. Davila Decl. ¶ 40. At that point Plaintiff Davila was handcuffed, placed in a Border Patrol vehicle and taken by Border Patrol agents to jail. *Id.* ¶ 41. The United States presented no evidence disputing this sequence of events or establishing a legitimate basis for Mr. Davila's arrest. Davila Decl. ¶ 42.

The United States attempts to wrap itself in the protection of an exception to the United States' waiver of immunity under the FTCA by casting Mr. Davila's claims as arising out of conduct that occurred when he was stopped at the immigration checkpoint. *See U.S. Motion to Dismiss* at 5. In so doing, the government asserts that it is not subject to suit under the "detention of goods" exception to the FTCA contained in Section 2860(c). As Plaintiff will demonstrate, this position is both factually and legally incorrect.

### 1. Proper construction of Davila's Complaint renders the detention of goods exception inapplicable.

As an initial matter, Plaintiff Davila does not complain of any act committed during the agents' inspection of his immigration status or, indeed, of the truck while at the immigration checkpoint. Rather, the acts giving rise to Mr. Davila's claim *followed* his immigration checkpoint detention and were instead related to the criminal investigation of Tocho Davila.

Relying on *Jeanmarie v. United States*, 242 F3d 600 (5th Cir. 2001), a case brought by a *pro se* litigant, the United States urges this Court to follow the Fifth Circuit's sweeping interpretation of the detention of goods exception. In addition, the vast majority of cases ~~invoking Section 2680(c) concern only loss or damage to property. Indeed, the Government has~~ itself conceded this interpretation. *See Gasho v. United States*, 39 F3d 1420 (9th Cir. 1994) ("As the government concedes, the Customs exception in § 2680(c) does not bar an intentional tort claim arising out of arrests by Customs agents, as the exception applies only to the detention of goods and merchandise, not persons.").

On this ground alone, the detention of goods exception is inapplicable here.

**2. Even if Plaintiff Davila's claim arises out of the detention of goods, the Government is nonetheless susceptible to suit pursuant to the law enforcement proviso of the FTCA.**

Defendant United States asserts that Section 2680(c) strips this Court of jurisdiction over Plaintiff Jose Davila's claims for false imprisonment and IIED. U.S. Mot. at 4-5. Defendant, however, fails to completely present relevant FTCA jurisprudence, and reaches an erroneous conclusion.

**a. Congress clearly intended to waive immunity for any claim arising out of certain intentional torts committed by law enforcement officials.**

The "central purpose" of the Federal Tort Claims Act was to "waiv[e] the Government's immunity from suit in sweeping language." *Dolan v. United States Postal Service*, 546 U.S. 481, 492 (2006) (internal quotation marks omitted). While it is true that statutes waiving the sovereign immunity of the United States must be "construed strictly in favor of the sovereign," *McMahon v. United States*, 342 U.S. 25, 27 (1951), this preferential reading does not apply to *exceptions* to a waiver of immunity. "The proper objective of a court attempting to construe one of the subsections of 28 U.S.C. § 2680 is to identify those circumstances which are within the

6

words and reason of the exception—no less and no more." *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984); *see also Dolan*, 546 U.S. at 492 (instructing courts to "narrowly construe[ ] exceptions to waivers of sovereign immunity . . . in the context of the sweeping language of the [FTCA].").

Under the FTCA as originally passed, the United States retained immunity from suit for certain intentional torts, including false imprisonment.  In response to unauthorized raids by the FBI, Congress drastically and deliberately altered that retention of immunity in 1974 by amending Section 2680(h) to expressly waive immunity for a list of enumerated intentional torts committed by federal law enforcement officials.  While retaining immunity for intentional torts committed by other federal officials, the plain, unambiguous language of section 2680(h), known as "the law enforcement proviso," waives that immunity for law enforcement officers.  Thus, since 1974, the FTCA's waiver of immunity and 28 U.S.C. § 1346(b) shall not apply to:

> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interferences with contract rights; *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.

28 U.S.C. § 2680(h) (emphasis in original).

The 1974 Senate Report accompanying addition of the law enforcement proviso to Section 2680(h) explained that the proviso should not be viewed as limited to constitutional tort situations but would apply to *any* case in which a federal law enforcement agent committed the tort while acting within the scope of his employment or under color of Federal law.  *See* S. Rep. No. 93-588, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S. Code Cong. & Admin. News

2789, 2791); *see also Garcia v. United States*, 469 U.S. 70, 76 (1984) ("The authoritative source

for finding the Legislature's intent lies in the Committee Reports on the bill.")

> Therefore, the Committee amendment would submit the Government to liability
> *whenever* its agents act under color of law so as to injure the public through
> ~~search and seizures that are conducted without warrants or with warrants issued~~
> without probable cause. However, the Committee's amendment should not be
> viewed as limited to constitutional tort situations but would apply to *any* case in
> which a Federal law enforcement agent committed the tort while acting within the
> scope of his employment or under color of Federal law.

S. Rep. No. 93-588 at 2791 (emphasis added).

Congress thus expressly acquiesced to suit even in cases that would otherwise fall within

existing exceptions to the FTCA. *See also* Jack Boger, Mark Gitenstein, & Paul R. Verkuil, The

Federal Tort Claims Act Intentional Tort Amendment: An Interpretive Analysis, 54 N.C.L. Rev.

497, 515 (1976) (reviewing the legislative history of the proviso at length). Indeed, as

demonstrated by the committee language cited above, Congress fully contemplated government

liability for torts arising from impermissible searches and seizures—and did so without

exempting those activities in a customs, tax or other detention of goods context.

### b. The Fifth Circuit ruling in *Jeanmarie* is inconsistent with other circuits and with the Fifth Circuit's own prior and later decisions.

The most sensible reading of Section 2680(h) recognizes that the law enforcement

proviso creates subject-matter jurisdiction over the enumerated list of state-law claims when they

arise in the course of federal law enforcement activity. It is simply a perverse conclusion that, as

long as a federal law enforcement officer has detained some personal property, he or she has the

ability to commit intentional torts at will against that person or violate the Constitution with

impunity. This conclusion is particularly perverse when viewed in light of unmistakable

congressional intent. In other words, if courts were to apply the detention of goods exception to

law enforcement personnel who commit intentional torts, the detention of goods exception would swallow up the law enforcement proviso, judicially nullifying the express intent of Congress.

Straightforward principles of statutory construction also require courts to assert jurisdiction over cases that fall within the law enforcement proviso, even if those officials were engaged in activities fairly described in Section 2680(c). First, the language of Section 2680(h) is categorical. It provides that "with regard to acts or omissions" by law enforcement officers, 28 U.S.C. § 1346(b), which confers subject matter jurisdiction on the federal district courts, "*shall apply* to any claim arising. . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" (emphasis added). It does not create any exception for intentional torts committed where detention of goods were also involved.

Second, as the Supreme Court recently reiterated, a "specific provision" in a statute "controls one[s] of more general application." *Bloate v. United States*, 130 S. Ct. 1345, 1354 (2010), quoting *Gozlon-Peretzv. United States*, 498 U.S. 395, 407 (1991). The law enforcement proviso of Section 2680(h) pinpoints an enumerated list of torts committed by an identified group of government employees. It is thus far more specific than the detention of goods exception. *See, e.g., Nguyen v. United States*, 556 F.3d 1244, 1250-57 (11th Cir. 2009) (comparing the broad language of the discretionary function exception contained in section 2680(a) to the specific language of 2680(h)). As the Fifth Circuit observed, "[Senate Report 93-588] is categorical and unqualified. The government is to be liable *whenever* its agents commit constitutional torts and *in any case* in which a Federal agent commits acts which under accepted tort principles constitute one of the intentional torts enumerated in the proviso." *Sutton v. United States*, 819 F.2d 1289, 1296 (5th Cir. 1987).

Moreover, the fact that the law enforcement proviso was passed later in time reinforces the conclusion that it must control.[2] This is so even if a later amendment would, in essence, repeal an earlier provision. Recognizing that implied repeal of statutory provision is generally disfavored, the Supreme Court has long applied the last-in-time canon of statutory construction:

> There are, however, "two well-settled categories of repeals by implication - (1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest....

*Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154 (1976), quoting *Posadas v. National City Bank,* 296 U.S. 497, 503 (1936).

The Fifth Circuit properly applied the canons of statutory construction when considering the interplay of the law enforcement proviso and the discretionary function exception contained in Section 2680(a) of the FTCA. *See Sutton,* 819 F.2d at 1297 (concluding that "if the law enforcement proviso is to be more than an illusory—now you see it, now you don't—remedy, the discretionary function exception cannot be an absolute bar which one must clear to proceed under § 2680(h)."). Like the detention of goods exception, the language of discretionary function exception is general, broad, and largely undefined,[3] and it, too, pre-dates enactment of the law enforcement proviso.

Not only does the Fifth Circuit's decision in *Jeanmarie* directly conflict with its earlier reasoning in *Sutton,* two of the three *Jeanmarie* panelists later applied the same analysis to the

---

[2] The detention of goods exception was amended in part by in 2000 by Civil Asset Forfeiture Reform Act of 2000 (CAFRA) (CAFRA's effective date is August 23, 2000). The only impact of CAFRA on § 2680(c) was to create exceptions to the exception  in the context of forfeiture, which is not at issue in this case.

[3] "Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based up on the exercise or performance of the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

equally broad discretionary function exception and reached the opposite conclusion. *See Castro v. United States*, 608 F.3d 266, 268 (5th Cir. 2010) (DeMoss dissenting) ("If the law enforcement proviso applies, sovereign immunity is waived and the discretionary function and intentional tort exceptions will not bar a plaintiff's claims for relief.") (internal citations omitted); *Castro v. United States*, 560 F.3d 381, 388, rev'd by *id.* (opinion by Stewart and DeMoss applying § 2680(h) to overcome the discretionary function exception for claims of assault, abuse of process and false imprisonment claims). By ignoring its own precedence and failing to apply the proper canons of statutory construction, the *Jeanmarie* court created unacceptable conflict with its own prior holdings and was in error.

**B.     Because regulatory provisions directing the manner of interrogation by Border Patrol agents are mandatory, the discretionary function exception does not protect the United States from suit.**

Defendant United States asserts that Plaintiff Davila's claim for IIED is barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a). U.S. Mot. at 5-7. Like their reliance on the detention of goods exception, the United States' invocation of the discretionary function exception is misplaced.

Again, the purpose of the FTCA was to "waiv[e] the Government's immunity from suit in sweeping language." *Dolan*, 546 U.S. at 492 (internal quotation marks omitted). The exceptions to jurisdiction in Section 2680 must be construed in light of that purpose. *Id.* The discretionary function exception deprives courts of jurisdiction over claims that involve "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Both the Supreme Court and the Fifth Circuit have refused to apply that exception to conduct that violates statutory mandates. *See Gaubert v. United States*, 449 U.S.

315, 347 (1991) ("If the employee violates the mandatory regulation, there will be no shelter

from liability because there is no room for choice and the action will be contrary to policy.");

*Sutton v. United States*, 819 F.2d at 1293 (concluding that action by a government agent "does

not fall within the discretionary function exception of § 2680(a) when governmental agents

exceed the scope of their authority as designated by statute or the Constitution.").

        In arguing that the manner in which Border Patrol agents interrogated Plaintiff Davila,

the United States yet again recasts Plaintiff's complaint and plainly misstates applicable

regulations.  First, Defendant attempts to water down the true nature of the complained of acts by

characterizing the agents' actions as "attempts to solicit information" from Davila.  U.S. Mot. at

5.  Properly stated, Davila actually complains that, while arrested, agents attempted to coerce

him into signing false statements regarding the actions of his son, Tocho.  *See* Comp. ¶ 28;

*Davila Dec.* ¶ 40.  In other words, Border Patrol agents attempted to coerce Davila into

committing a federal criminal act.  *See* 18 U.S.C. § 1001 (criminalizing the making of a false

statement or writing to the Government).

        Second, the Government contends that the agents' actions were discretionary:  "Plaintiff

has identified no federal statute, regulation, or policy that restricts what an agent may say to a

witness to induce him to give a statement, and *in fact there is none*." U.S. Mot. at 6 (emphasis

added).  The United States' representation is without merit.

        Border Patrol agents are bound by the regulations in Title 8 of the Code of Federal

Regulations.  Relevant here, agents are prohibited from coercing a person to make a statement.

Specifically,

> The following standards for enforcement activities contained in this section
> *must* be adhered to by every immigration officer involved in enforcement
> activities.  Any violation of this section *shall* be reported to the Office of

the Inspector General or such other entity as may be provided for in 8 CFR
287.10.

* * *

> (c) Conduct of arrests
> > (2)(vii) The use of threats, coercion, or physical abuse by
> > ~~the designated immigration officer to induce a suspect to waive his or her~~
> > rights *or to make a statement* is prohibited.

8 C.F.R. 287.8(c)(2)(vii) (emphasis added).

As the Government concedes, Plaintiff Davila was unquestionably "detained" or

"arrested" at the time Border Patrol agents attempted to coerce him into making a false

statement. *See Garcia v. State*, 296 S.W.3d 180, 184 (Tex. App.—Houston [14th Dist.] 2009, no

pet.); Davila Decl. ¶ 40. Because Plaintiff has set forth plausible facts to support his claim,[4] and

Border Patrol agents failed to adhere to a mandatory regulation, the Court should deny the

United States' request for dismissal based on the discretionary function exception.

## C. Because Plaintiff has no other remedy for certain damages, his claim for intentional infliction of emotional distress is proper.

The United States seeks dismissal of Plaintiff Davila's claim of IIED pursuant to FRCP

Rule 12(b)(6).  U.S. Mot. at 7.  In so doing, Defendant construes "the crux" of Davila's IIED

claim as duplicating relief sought in other claims for relief.  *Id*.  However, the emotional distress

Davila complains of here is not cognizable through other claims and the claim is permissible.

Intentional infliction of emotional distress is a "gap-filler" claim designed to provide

redress when no other cause of action is available to redress severe emotional distress.

*Creditwatch, Inc. v. Jackson*, 157 S.W. 3d 814, 816 (Tex. 2005).  Where a statute or common

law claim provides a more specific cause of action and damages for emotional distress is

available under that cause, an aggrieved party may not bring an additional claim for IIED

---

[4] Notably, the United States does not challenge Davila's position that agents attempted to use coercion to obtain a statement; it merely contends that such tactics are discretionary.

because there is no gap to fill. The claim was never intended to supplant or duplicate existing statutory or common law remedies. *Id*. at 816.

Under certain limited circumstances, however, a Plaintiff may be left with no claim. If a ~~Plaintiff simply does not qualify at all for a certain remedy, then the emotional distress claim is~~ not barred. *See e.g., GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1998) (allowing IIED when workplace harassment was not actionable under the Worker's Compensation Act when not based on one particular event but rather on a series of events).

If the gravamen of the complaint is embodied in the statutory or other common law claim, then an IIED claim will be denied. If, however, additional facts are presented on matters unrelated to the statutory or specific common law claim, then a cause of action for intentional infliction may be maintained. *See, e.g., Hoffman–LaRoche Inc. v. Zeltwanger*, 144 S.W. 3d 438, 441 (Tex. 2004) ("when the gravamen of the plaintiff's complaint is for sexual harassment, the plaintiff must proceed solely under a statutory claim unless there are additional facts, unrelated to sexual harassment, to support an independent tort claim for intentional infliction of emotional distress.").

Contrary to the United States' assertion, a claim for IIED does not necessarily require a showing that the defendant acted intentionally; the claim may also be established by a showing of recklessness. *Twyman v. Twyman*, 855 S.W. 2d 619, 621 (Tex. 1993). A defendant is reckless when he or she knows or has reason to know of facts that create a high degree of risk of harm to another, yet deliberately proceeds to act in conscious disregard of, or indifference to that risk. *Id*. at 624. Reckless intent is adequately alleged if emotional injury is the primary risk created by the reckless conduct. *See e.g., Morgan v. Anthony*, 27 S.W. 3d 928, 930-931 (Tex. 2000) (emotional injury is a primary risk of stalking). Moreover,

14

> Intent may be inferred from the circumstances and the conduct of the actor, not just from the overt expressions of intent by the actor.... Of course, rarely will a defendant admit knowing of a substantial certainty that emotional harm would befall the victim.... Juries are free to discredit the defendant's protestations that no harm was intended and to draw necessary inferences to establish intent.

*Toles v. Toles*, 45 S.W. 3d 252, 259-60 (Tex. App. Dallas 2001).

Finally, Plaintiffs must show that the Defendants engaged in extreme and outrageous conduct. *GTE Southwest, Inc.*, 998 S.W.2d at 611 (internal citations omitted). In general, rude or insensitive behavior will not suffice. However, the entire course of harassing conduct may be considered as a whole. *Id.* at 615. Thus while a single act, such as a verbal insult, may not constitute intentional infliction, a course of conduct over an extended period of time may well meet the requirement of this claim. *Id.* at 615-17; *see also Tiller v. McLure*, 121 S.W. 3d 709, 714-15 (Tex. 2003). Importantly, the relationship between the parties must be factored into the evaluation of the behavior in question. "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *GTE Southwest Inc.*, 998 S.W.2d at 612; *see also Toles*, 45 S.W. 3d at 261; *Tiller*, 121 S.W. 3d at 714.

To avoid IIED liability, the United States attempts to limit the distress suffered by Mr. Davila to the false imprisonment. This, unfortunately, does not capture the entirety of the claim. Plaintiff Davila's declaration reflects an ongoing pattern of harassment by federal law enforcement officials without cause. *See* Davila Decl. ¶¶ 45-47. The false imprisonment on January 7, 2009, was just one in a series of acts by Border Patrol against Mr. Davila. Ever since his son, Tocho, was arrested on drug charges, scrutiny of Plaintiff Davila increased both in frequency and intensity. *Id.* It reached the point where Mr. Davila, a lifelong resident of the

area, became nervous and fearful each time he would approach the checkpoint, unsure of what lay in store. *Id.* ¶ 47. His fears turned out to be were well-founded.

Neither Texas statutory nor common law provides relief for Plaintiff Davila's harm here. ~~Accordingly, his IIED claim is not barred. Should the Court determine that the basis for Plaintiff~~ Davila's claim are not sufficiently set forth in the Complaint, leave to amend rather than dismissal is the proper course of action. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 566 (5th Cir. 2002); *Jacobsen v. Osborne*, 133 F.3d 315, 318-20 (5th Cir. 1998).

## IV. THE COURT SHOULD DENY DEFENDANT UNITED STATES' MOTION TO DISMISS PLAINTIFFS DAVILA AND DUARTE'S CLAIMS RELATED TO THE SECOND INCIDENT

### A. Because all of the information regarding Plaintiffs' claim of negligence in issuing the BOLO is in the sole possession of the United States, the Court should grant Plaintiffs' leave to conduct jurisdictional discovery.

Defendant United States asserts that it is not liable for the Border Patrol's negligence in issuing the BOLO because the way federal law enforcement officers issue BOLOs is discretionary, and the court lacks jurisdiction. U.S. Mot. at 8-9. However, if the policies, regulations or directives regarding how, who and when agents can issue BOLOs, and any required content are mandatory, agents lack discretion and the discretionary function exception does not apply. *See* Sec. III.B., *supra*.

As Plaintiffs bear the burden of proof with regard to jurisdictional issues, they must show that federal officers failed to follow mandatory statutes, policies, regulations or directives when issuing a BOLO or that reasonable suspicion was lacking to even issue the BOLO. Plaintiffs have no access to the necessary documents and information; because that evidence lies solely

within the possession of the Defendant, Plaintiffs should be allowed to conduct limited discovery to address these claims.[5]

Moreover, arrests resulting from BOLOs issued without adequate suspicion or cause are unconstitutional. *See United States v. Gonzalez*, 897 F.2d 504, 506 (10th Cir. 1990) citing *United States v. Hensley*, 469 U.S. 221, 223 (1985). Because constitutionally repugnant acts are not discretionary, as set forth above, Plaintiffs are entitled to discover information regarding the facts, suspicions or other basis for issuing and that were contained in the BOLO. Until they are allowed to do so, the Defendant's request should be denied.

Plaintiffs submit that discovery is essential to adequately respond to Defendant's motion. For example,

1. The United States' evidence refers to "a series of radio transmissions" but is void of any description whatsoever of the content of those transmissions. *See e.g., Declarations of Rangers Basak ¶ 4, Khan ¶ 4, Sikes ¶ 5.*

2. The evidence proffered by the Government is similarly void of any information regarding the Border Patrol agent with whom those transmissions were presumably conducted, the person who issued the BOLO, factual basis upon which it was issued or the actual content of the BOLO itself.

3. Plaintiffs can locate no information regarding the requirements and procedures for issuing a BOLO, discretionary or otherwise.

4. Likewise, Plaintiffs can find no information regarding the requirements and procedures for conducting a "felony stop."

5. The Rangers unanimously (and virtually verbatim) state that they had "reason to believe armed and dangerous." None of the testifying Ranges explained the basis for that belief. While the evidence supports a belief that Tocho Davila (the presumed subject of the BOLO) would attempt to flee, it is void of any indication, much less fact, that Tocho ever possessed or a gun, knife or other weapon. The existing evidence reflects the only "weapons" he was accused of wielding was a 1985 pick-up truck and a door. Again, Plaintiffs are entitled to discovery regarding the BOLO.

---

[5] Although the United States asserts that no such policy exists, Plaintiffs point to the same erroneous assertion with regard to interrogation methods made above. The Government's representation should not be dispositive and should not bar Plaintiffs' request for leave to conduct jurisdictional discovery.

6. The Rangers again unanimously (and virtually verbatim) testify that the BOLO was for a "Kia that was associated with a wanted felon." There is no evidence that would support a reasonable basis to form the belief that the Kia was associated with the "wanted felon" (or even who the felon was or why he/she was wanted). There is, however, evidence that Tocho had not driven or been in that vehicle for months ~~before the April 2009 encounter occurred. See Davila Decl. ¶ 4. Yet again, Plaintiffs~~ are entitled to discovery regarding the BOLO.

Plaintiffs have exhausted all reasonable, publicly available avenues for locating this information. A thorough search of both the Department of the Interior and the Department of Homeland Security's websites results in no information the requirements and/or procedure for issuing a BOLO or for conducing a felony stop.[6] Plaintiffs are entitled to seek discovery on these matters. Until that time, the Defendant's request for dismissal of this claim should be denied. *McAllister v. FDIC*, 87 F.3d 762, 766 (5th Cir. 1996); *Williamson*, 645 F. 2d at 404.

**B.      Because the Rangers' use of force was not privileged, summary judgment dismissal of plaintiffs' assault claim is improper.**

Defendant United States urges dismissal of Plaintiffs' assault claims by asserting that they are entitled to the defense set forth in Texas Penal Code § 9.51. U.S. Mot. at 9-11. "Defendants moving for summary judgment must expressly present and conclusively prove all essential elements of their defense as a matter of law; there can be no genuine issues of material fact." *Montgomery v. Kennedy*, 669 S.W.2d 309 (Tex. 1984) (citations omitted). While Defendant concedes that the acts giving rise to Plaintiffs' claims constitute a claim of assault, U.S. Mot. at 10, it nonetheless argues that these acts were "privileged." *Id.* Defendant's urging is to no avail.

**1. The Government cannot show that it meets the requirements entitling it to the defense.**

---

[6] Plaintiffs note that there is a link to Law Enforcement Reference Manual, available at http://www.nps.gov/aboutus/foia/loader.cfm?csModule=security/getfile&PageID=407172. However, the majority of the materials relevant here are redacted, and there is no information regarding BOLOs.

18

Justified assault in the context of an arrest requires a reasonable belief the force is immediately necessary to make the arrest or to prevent evasion of the arrest *and* (1) a reasonable belief that the arrest is lawful *and* (2) that the officer manifests his intent to arrest and identifies himself as an officer, unless it is already known. TEX. PEN. CODE § 9.51(a) (emphasis added). Defendant United States omitted a provision within the same defense that applies when deadly force is use, as was the case here. The defense for assault with deadly force[7] is justified

> when and to the degree the peace officer reasonably believes the deadly force is *immediately* necessary to make an arrest, or to prevent escape after arrest, if the use of force would have been justified under Subsection (a) *and*:
>
> > (1) the actor reasonably believes the conduct for which arrest is authorized included the use or attempted use of deadly force; or
> > (2) the actor reasonably believes there is a substantial risk that the person to be arrested will cause death or serious bodily injury to the actor or another if the arrest is delayed.

TEX. PEN. CODE § 9.51(c).

As Defendant correctly notes, Texas law of "arrest" applies when an officer stops a person on reasonable suspicion or probable cause. *See Garcia v.* State, 296 S.W.3d 180, 184 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

The Fifth Circuit has enunciated factors to be considered when applying the defense in Section 9.51:

> (1) Were the agents peace officers?
> (2) Did they identify themselves or could they have been identified as peace officers?
> (3) Did they reasonably believe that an arrest or search was lawful at the time?
> (4) Did they make their purpose clear?
> (5) Was the force that was used reasonable?

*Villafranca v. United* States, 587 F.3d 257, 264 (5th Cir. 2009) (citations omitted).

---

[7] "Deadly force" is defined as "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." TEX. PEN. CODE § 9.01(3).

Defendant's evidence establishes the probable cause giving rise to the stop: that Plaintiff was allegedly speeding and swerving. *See e.g.,* Basak Decl. ¶ 5. That a BOLO also existed is not relevant to the analysis, as it was not the basis for the arrest. *Whren v. United States,* 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis."). According to Plaintiffs' declarations, Mr. Davila was not speeding or driving recklessly, and he peacefully stopped the car when he noticed what he believed to be the Border Patrol vehicles behind him with their lights activated. Davila Decl. ¶¶ 8-9, 25; Duarte Decl. ¶ 6.

The arrest, therefore, was unlawful from the beginning. As set forth in greater detail in Plaintiffs' Response to the Rangers' Motion to Dismiss and in Section IV.D., *infra,* even if the initial pulling over of the vehicle was lawful, very little—if anything—that followed was. Plaintiffs' evidence is replete with facts establishing that the detention exceeded the constitutional limits, both in term of scope and duration. *See generally* Davila Decl., Duarte Decl. (describing use of force after being handcuffed, searching the vehicle without cause or suspicion, failing to make diligent efforts to quickly confirm or dispel the Rangers' suspicions). The defense is unavailable based on unlawfulness of the arrest alone.

No official made their purpose clear as required—whether that purpose was to investigate a suspicion of speeding or to search for the subject of the BOLO. Davila Decl. ¶¶ 26-27; Duarte Decl. ¶¶ 13, 23, 25.

Moreover, the claimed defense is unavailable if the United States' used excessive force. First, the privileged use of deadly force requires the Rangers to "the actor reasonably believe[] the conduct for which arrest is authorized *included* the use or attempted use of deadly force; or to prevent escape after arrest, if the use of force would have been justified under Subsection (a)…"

Tex. Pen. Code § 9.51(c) (emphasis added).  The basis for the arrest was a traffic violation. Plaintiffs' evidence, which is not contradicted by the Government's evidence, establishes that Plaintiffs never used or attempted to use *any* force—much less deadly force—and they made no effort to evade arrest.  *See generally* Davila Decl., Duarte Decl.  Standing alone, this evidence renders the justification defense inapplicable.

Even if the Rangers' reasonably believed that the BOLO suspect was present in Plaintiffs' vehicle, the Government's own evidence fails to establish any basis for a reasonable belief that Tocho would "cause death or serious bodily injury if the arrest [was] delayed." TEX. PEN. CODE § 9.51(c)(2).  As set forth below, the Government's own documents establish that Tocho never was to alleged to have used a "weapon" other than a vehicle and a door.  *Indictment in United States v. Tocho Davila-Luna*, at Count Two; *Factual Basis in United States v. Tocho Davila-Luna*, at 13.

And the Rangers' statements evince no showing of fear that if they did not arrest Plaintiffs immediately, Plaintiffs would cause death or serious bodily injury to others.  Indeed, by their own testimony, Plaintiffs made no attempt to evade arrest and never did or even said anything to challenge or resist the officers.  When coupled with the Plaintiffs' testimony of the patently excessive forced used *after* they were handcuffed, the use of deadly force was simply unlawful and not subject to privilege. *See* Davila Decl. ¶¶ 11, 12, 19; Duarte Decl. ¶¶ 12, 27.

### 2. *Villafranca* is of limited value.

The United States' reliance *Villafranca v. United States*, 587 F.3d 257 (5th Cir. 2009) is limited in that it impermissibly and selectively applies Texas law.  As the Fifth Circuit correctly notes, liability under the FTCA is determined "in accordance with the law of the place where the act or omission occurred." *Id.* at 260, citing 28 U.S.C. § 1346(b).  It also recognizes that the

FTCA waives sovereign immunity for actions sounding in tort "in the same manner and to the same extent as a private individual under like circumstances." *Id.*, citing 28 U.S.C. § 2674(a).

By the plain language of the statute, the defenses contained in Section § 9.51(a) of the ~~Texas Penal Code apply only to "peace officers." The Texas Legislature expressly excludes~~ Border Patrol agents and other immigration officials and National Park Service Rangers from the definition of "peace officer" under Texas law. *See* TEX. CODE OF CRIM. P. Art. 2.12 (listing the officers designated as peace officers and excluding all federal law enforcement officers); *Id.*, Art 2.122(a)(3) (expressly excluding "Special Agents of the United States Immigration and Customs Enforcement"); *id.* at Art. 2.122(d) ("A commissioned law enforcement officer of the National Park Service is not a peace officer under the laws of this state…"). The clear import of this statute is that federal officers—including Park Rangers and Border Patrol agents—are not entitled to the defense set forth in § 9.51(a) of the Texas Penal Code. When applying state law, federal courts are not free to select only portions of that law; they must give faithful effect to its entirety. *See e.g., Leavitt v. Jane L.*, 518 U.S. 137, 138 (1996) (summarily reversing a 10th Circuit decision on the grounds that the "determination as to the Utah Legislature's intent to be irreconcilable with that body's own statement on the subject.")

The Texas Legislature's intent to exclude Border Patrol agents and National Park Service Rangers from the definition of "peace officer" is express and unambiguous. So too is its expression that § 9.51(a) applies only to "peace officers." The Fifth Circuit is apparently concerned that federal law enforcement officers may not be entitled to identical protections available to state officials. *Villafranca*, 587 F.3d at 264. That, however, is a matter for Congress, to remedy, not the courts.

22

The analysis that both embraces the intent of the FTCA and faithfully applies Texas law is one of assault defenses available to private citizens, should a federal law enforcement officer invoke that defense. *See, e.g.*, TEX. PEN. CODE § 9.51(b). Had that been the case here, ~~Defendant's motion for summary judgment would, nonetheless, fall short. The requirements for~~ the private individual defense under § 9.51(b) are substantively similar to those in §9.51(a), which, as set forth above, the United States cannot meet.

C.     **Because Plaintiffs have stated plausible facts to support their claim of IIED arising from the second incident, the Government is not entitled to summary judgment.**

As with Plaintiff Davila's claim for IIED arising out of the first incident, the Government again urges summary judgment for Plaintiff Davila and Duarte's claims for injuries arising out of the second incident. Plaintiffs repeat and incorporate by reference the standards and guiding jurisprudence regarding IIED in Texas set forth in Section III. C, *supra.*

Here, Plaintiffs Duarte and Davila witnessed the brutal handling of loved ones. Mr. Davila watched helplessly while Rangers pointed weapons at, handcuffed, and pushed to the ground his 15-year old grandson and his girlfriend. Davila Decl. ¶ 19. Ms. Duarte, likewise, was horrified at the treatment her boyfriend and the minor child suffered at the hands of federal law enforcement officers. Ex. C, Declaration of Marcela Duarte ¶ 27. Pointing weapons at handcuffed persons who have displayed no sign of violence or flight is particularly outrageous when carried out by law enforcement officers.

No common law or statutory remedy exists for the harm caused by witnessing assaults on others. Accordingly, IIED is appropriate here. As explained above, should the Court determine that the Complaint fails to set forth sufficient facts to explain the basis of this claim, the proper

course of conduct is not dismissal but rather leave to amend. *Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 566 (5th Cir. 2002)

**D.     Because the Rangers exceeded their legal authority to detain Plaintiffs, their request for summary judgment on Plaintiffs' false imprisonment ~~claim should be denied.~~**

Defendant United States urges summary judgment on Plaintiffs' false imprisonment claim related to the second incident. The heart of the United States' argument is that the Rangers had the legal authority to detain the Plaintiffs. *See* U.S. Mot. at 13. As Defendant notes, under Texas law, false imprisonment requires establishment of "the absence of authority." *Sears, Roebuck & Co. v.* Castillo, 693 S.W. 374, 376-76 (Tex. 1985). Contrary, however, to Defendant's argument, the Rangers own evidence coupled with that presented by Plaintiffs, demonstrates that the federal law enforcement officials exceeded their authority to detain Plaintiffs. Summary judgment is, accordingly, improper.

A clear framework exists for reviewing the constitutional validity—or legal authority—of traffic stops: (1) was the officer's action justified at the inception; and (2) was the search and seizure was reasonably related in scope to the circumstances that initially justified the stop." *United States v. Magana*, 544 F. Supp. 2d 560, 564 (W.D. Tex. 2008), citing *United States v. Valadez*, 267 F.3d 395, 397 (5th Cir. 2010) (citing the standards in *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)); *see also United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir. 1993).

In addition, to comport with constitutional requirements "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Magana*, 544 F. Supp. at 564, quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983). Absent additional suspicion to continue the detention, the stop must end once the officer's suspicion giving rise to the detention is confirmed or dispelled. *Magana*, 544

F. Supp. 2d at 566 (citation omitted). "At that point, continuation of the detention is no longer supported by the facts that justified its initiation." *Magana*, 544 F. Supp. 2d at 566, quoting *Shabazz*, 993 F.2d at 436. In other words, whether a stop's duration exceeds the contours of the Fourth Amendment is analyzed in terms of "assessing whether the police diligently pursued a means of investigation that was likely to quickly dispel or confirm their suspicions." *Herrera v. State*, 80 S.W.3d 283, 288 (Tex. App. Texarkana 2002) (writ history omitted), citing *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

Authority to extend the stop can derive only from additional, new articulable facts—and reasonable inferences from those facts. *Herrera*, 80 S.W. 3d at 288, citing *Davis v. State*, 947 S.W.2d 240, 244-45 (Tex. Crim. App. 1997). "A detention which is not temporary and reasonably related in scope to the circumstances which justified the interference is unreasonable and violates the Fourth Amendment." *Id.*, citing *Davis*, 947 S.W. 2d at 243; *see also Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (holding that reasonableness "is measured in objective terms by examining the totality of the circumstances.").

1. **Because a dispute of material fact exists regarding the reasonable suspicion that formed the basis of the stop, summary judgment is not appropriate.**

As discussed above, the United States points to alleged traffic infractions as the reasonable suspicion giving rise to their ability to initially detain Plaintiffs. *See e.g.*, Basak Decl. ¶¶ 8-10; Khan Decl. ¶ 7; Trester Decl. ¶ 7. Indeed, even with knowledge of an alleged "be-on-the-lookout" for a person associated with Plaintiffs' vehicle, all testifying Rangers declined to rely on the BOLO as the basis for initiating a stop. *See e.g.*, Basak Decl. ¶ 5 ("if we found the vehicle described in the BOLO *and* had a reason to stop it…."). The constitutional analysis,

therefore, is inextricably tied to the reasonableness of the Rangers' actions for the purposes of effectuating a stop for speeding and swerving.

The United States presents no other evidence other than the Rangers' self-serving ~~testimony that Plaintiffs were speeding. The record is void of any other, impartial evidence, such~~ as a radar printout or a traffic ticket. The value of their testimony is limited at summary judgment, in that self-serving testimony of the moving party is particularly difficult to challenge without the benefit of accessories such as depositions or cross-examination. *Int'l Shortstop, Inc.*, 939 F.2d at 1265.

Plaintiffs testify that they were not speeding, swerving or committing any other infraction. Davila Decl. ¶ 25; Duarte Decl. ¶ 6. The Court should also infer as supporting Plaintiffs' contention the fact that the Rangers never issued a citation or even a warning to Davila regarding excessive speed or careless driving, even though National Park Service regulations fully authorize penalties for these violations. *See* Davila Decl. ¶ 25; *see also* 36 C.F.R. § 1.3(a) (establishing penalties for traffic violations); *id.* at 4.21 (regulating speed limits); *id.* at § 4.22 (regulating unsafe operation).

When Plaintiffs' statements are taken as true, as they must be at this stage, the Court should deny summary judgment based on the existence of a dispute of material facts. *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002) (stating that facts and inferences must be viewed in the light most favorable to the nonmoving party). Moreover, Defendant's self-serving testimony supported by no other evidence is of limited value. *Int'l Shortstop, Inc.*, 939 F.2d at 1265. Accordingly, the Rangers cannot conclusively establish any suspicion or cause to stop the vehicle, and that the detention was illegal from its inception.

26

2. **Even if the Court were to accept that the Rangers were authorized to initially stop Plaintiffs, everything that followed the initial stop exceeded permissible constitutional bounds.**

Even if the Court were to disregard Plaintiffs' summary judgment evidence and rule that ~~the suspicion giving rise to the stop was sufficient, the Rangers must nonetheless conduct the~~ stop in a way that comports with constitutional requirements: it must be reasonable in scope and duration; only the force necessary to effectuate the stop can be used; and the Rangers must make diligent efforts to confirm or dispel the suspicion. Not only does the United States' evidence fail to establish constitutional compliance, Plaintiffs' evidence categorically disputes each of these requirements. Again, any other subjective intent the Rangers may have had, such as wanting to see if any of the passengers were the target of the BOLO, is irrelevant and does not dilute the constitutional requirements for the officers' conduct. *United States v. Sanchez-Pena*, 336 F.3d 431, 434 (5th Cir 2003) ("the constitutional reasonableness of the stop does not depend upon the actual motivations of the officer involved"), citing *Whren*, 517 U.S. at 813.

a. **The stop was not reasonable in scope and duration.**

Evidence presented by the Plaintiffs refutes the United States' contention that the stop was reasonable in scope and duration. It stretches the imagination to envision a situation that, having stopped a vehicle for speeding, requires an hour to check the driver's and any passengers' identification, verify the existence or lack of outstanding warrants, and to issue a warning or citation. Even if the detaining officer suspects intoxication, performance of a field sobriety tests implicates the extension of the stop for only a brief period longer, particularly when the test shows no legal intoxication.

Plaintiffs' evidence indicates that the Rangers did not take diligent efforts in conducting the traffic stop by delaying inspection of the Plaintiffs' identification. Davila Decl. ¶ 24; Duarte

27

Decl. ¶ 18.  Likewise, Plaintiff Davila states that the sobriety field test was not administered until after the search of their vehicle had been conducted and the Plaintiffs were discounted as the subject of the BOLO.  Davila Decl. ¶¶ 22-23.

### b.   ~~The Rangers used excessive force to effectuate the stop.~~

Looking solely to the reasonableness of the stop in terms of speeding and reckless driving, the record reflects that the United States failed to act in a constitutionally reasonable manner.  The United States does not dispute that Plaintiffs complied peacefully with all law enforcement orders.  Comp. ¶¶ 43, 46, 47.  The United States' evidence does not even suggest that Plaintiffs were verbally abusive, much less posed an imminent threat of bodily harm or death.  There is no showing of any act on the part of Plaintiffs prior to the stop that would give rise for concern, such as any effort to evade the stop, throwing articles out of the vehicle, or visibly rummaging for something that could be perceived as a weapon.  Surrounding a car for speeding with multiple vehicles and numerous armed officers is facially and patently excessive.

Were the Court to take into consideration the existence of the BOLO, authority to use deadly force is lacking nonetheless.  In addition to the factors mentioned above regarding the Plaintiffs' peaceful conduct, the prior conduct of Tocho Davila did not warrant the use of deadly force.[8]  According to the United States' own evidence, the incident at the Border Patrol checkpoint for which Tocho Davila was criminally charged occurred three months before the April incident.  *See Factual Basis in United States v. Tocho Davila*, p. 10.  The "weapon" Tocho used was a 1985 white Ford truck.  *Indictment in United States v. Tocho Davila-Luna*, at Count Two.  And while Tocho allegedly drove away from the checkpoint at a high rate of speed, it was law enforcement—and only law enforcement—who fired weapons.  *See* Ex. A; *see also* Ex. D,

---

[8] Although nothing in the record establishes that Tocho Davila was the subject of the BOLO, for the purposes of this Motion, Plaintiffs assume *arguendo* that he was.

*U.S. Customs and Border Protection Significant Incident Report.* Finally, the "forcible assault" charged against Tocho in Count Three of the Indictment arose from his kicking a door that "caused the door to fly back open injuring Graham's left hand." *Factual Basis in United States v. Davila*, at 13.

None of these factors authorized the use of deadly force by the Rangers. Even in the context of officers stopping individuals clearly identified as wanted subjects who had recently committed violent acts, the responding officer did not use any force that would exceed the suspicion or cause giving rise to the actual stop. *See, e.g., United States v. Walker*, 615 F.3d 728 (6th Cir. 2010) (police officers stopping a man matching the personal description and driving vehicle with matching license number of person wanted for armed robbery committed 27 minutes before used no force to initiate stop); *see also United States v. Hensley*, 469 U.S. 221, 224-25 (1985) (detaining officer approached vehicle of suspect in armed robber—who the officer also knew as a convicted felon—with weapon pointed up to the sky and no arrest or handcuffs until the officer saw the butt of a gun on the seat).

Even if the Court accepts that the use of deadly force was authorized at the stop's initiation, there is simply no justification for the continued use of deadly force once the Plaintiffs were handcuffed and incapacitated. This is particularly so when coupled with the undisputed fact that Plaintiffs exhibited no signs of aggression or threat. Plaintiffs' testify that, even after handcuffed, the Rangers continued to point weapons at them. See Davila Decl. ¶ 27; Duarte Decl. ¶ 19.

### c. The Rangers failed to make diligent efforts to confirm or dispel their suspicions.

If the Court considers the duration and scope of the arrest in light of the BOLO, it must also then consider the Rangers' efforts to confirm or dispel their suspicions regarding the BOLO.

As Plaintiffs' have done for the purposes of this Motion, the Court is permitted draw the inference that BOLO referred to Tocho Davila. The United States' documentary evidence and Rangers' statements show only that: (1) the subject of the BOLO was a male, *see e.g.*, Basak Decl. at 4 ("*He* had also recently been involved…) (emphasis added); and (2) and that the "weapons" Tocho used was a 1985 white Ford truck and a door. *Indictment in United States v. Tocho Davila-Luna*, at Count Two; *Factual Basis in United States v. Tocho Davila-Luna*, at 13.

Conspicuously absent from the United States' is any evidence that would support a show of diligence. While it is unknown whether the BOLO contained a description of the subject, the United States' evidence is void of suggestion that they requested a description or when they received it. Plaintiffs' evidence shows that it was not until well after their detention and the search of the vehicle that another officer arrived at the scene confirmed that they were not the subject of the BOLO. Davila Decl. ¶ 22-23; Duarte Decl. ¶ 17. Coupled with the United States' evidence that the Rangers conducted "planning operations," received a "series of radio communication" and that the actual stop lasted for almost an hour, the Government cannot show that it exercised any diligence to ensure the least intrusive, most expeditious course of action.

If the BOLO contained a description, or if the Rangers had sought one via radio at the beginning of the stop, the Plaintiffs could have been excluded on sight. Marcela Duarte is a female and was not the driver. She could have been immediately excluded in relation to the BOLO, and there was no other legal justification to detain her, much less in handcuffs at gunpoint. As to the male occupants, obtaining even a radio description of Tocho would have quickly dispelled the Rangers' suspicions. Plaintiff Davila is a 130-pound man in his late sixties, virtually impossible to confuse with a male twice his size and more than half his age. Duarte Decl. ¶ 24. The final occupant of the vehicle was a minor male; again, easily excludable. Davila

30

Decl. ¶ 12; Duarte Decl. ¶ 27.  Had the Rangers complied with their constitutional obligations, the stop would have been imminently shorter in duration and no force at all would have been used.

~~Accordingly, the United States' request for summary judgment on Plaintiffs' false~~ imprisonment claim is inappropriate, as no authority for their actions existed.

## V.      Conclusion

For the reasons set forth above, the Court should deny Defendant United States' Motion to Dismiss.  Alternatively, the Court should grant leave for Plaintiffs to conducted limited discovery as requested.

Respectfully Submitted,

TEXAS RIOGRANDE LEGAL AID, INC.

/s/ Javier Saenz

ATTORNEY IN CHARGE FOR PLAINTIFFS

Javier Saenz
State Bar No.: 24070543
1331 Texas Ave.
El Paso, Texas 79901
(915) 585-5100
(915) 544-3789 – facsimile

Amanda Chisholm
Texas Bar No. 24040684
114 N. 6th
Alpine, TX  79830
(432) 837-1199
(432) 837-9946 – facsimile

Susan L. Watson
Texas Bar No. 24028115
311 Plus Park, Ste. 135
Nashville, TN 37217
(615) 750-1200
(615) 366-3349 – facsimile

## CERTIFICATE OF SERVICE

I certify that on June 3, 2011, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notification to

> Zachary Richter
> Trial Attorney, Constitutional Torts Staff
> United States Department of Justice, Civil Division
> P.O. Box 7146, Ben Franklin Station
> Washington, DC 20044

> /s/ Javier Saenz
> Javier Saenz