UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JOSÉ DAVILA, et al., Plaintiffs, | § § § | |
| v. | § § | No. 3:10cv366-FM |
| UNITED STATES, et al., Defendants. | § § § | |

### REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS IFTIKHAR KHAN, BLAKE TRESTER, PHIL BASAK, BRIAN SIKES & MARK SPIER

In their opening motion, the Rangers explained why qualified immunity protects them from suit. It then became Plaintiffs' burden to demonstrate that qualified immunity does not apply. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). This, Plaintiffs have failed to do. As the Supreme Court recently explained, qualified immunity gives government officials "breathing room" to carry out their responsibilities. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011). A law enforcement officer is shielded from liability unless he violates some constitutional boundary so clearly established as to be "beyond debate." *Id.* at *7. Even if Plaintiffs' version of events were accurate, the record would still show that the Rangers did not transgress any constitutional boundaries that are beyond debate. Instead, the Rangers made a permissible stop employing precautions that courts have routinely approved. Therefore, qualified immunity protects them from suit, and this Court should grant them summary judgment.

I. **THE RANGERS ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFFS' UNLAWFUL-SEIZURE CLAIMS BECAUSE DETAINING PLAINTIFFS DID NOT VIOLATE ANY CLEARLY ESTABLISHED FOURTH AMENDMENT RIGHTS.**

As the Rangers have explained, *see* Rangers' Mot. at 5-8, the traffic stop at issue here was far from the sort of clearly unreasonable stop that could justify a denial of qualified immunity. Plaintiffs misstate the law of traffic stops and qualified immunity and, in the process, underestimate the latitude courts have allowed law enforcement officers in investigating crimes and taking measures to protect themselves and the public.

### A. The traffic stop was justified at its inception.

Plaintiffs' argument that the stop was unlawful from its inception proceeds from a misunderstanding of the Fourth Amendment. Beginning with the mistaken inference that the Rangers have abandoned the alert received from Border Patrol as a basis for initiating the stop, Plaintiffs argue that the alert "is therefore not relevant to the qualified immunity analysis, as it was not the basis for the arrest." Opp'n at 4. But an officer need not justify a stop or arrest based on the offense he had in mind at the time of the stop. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Because "Fourth Amendment reasonableness 'is predominantly an objective inquiry,'" an action is reasonable "'*whatever* the subjective intent' motivating the relevant officials." *al-Kidd*, 131 S. Ct. at 2080 (quoting *Indianapolis v. Edmond*, 531 US. 32, 47 (2000), and *Whren v. United States*, 517 U.S. 806, 814 (1996)). Reasonableness turns on the "facts that [the officer] knows." *Devenpeck*, 543 U.S. at 153; *see also United States v. Gomez*, 623 F.3d 265, 269 (5th Cir. 2010). If those facts, "taken together with rational inferences from those facts, reasonably warrant the . . . seizure," then that seizure is lawful, whatever the officer's subjective purpose. *United States v. Pack*, 612 F.3d 341, 352 (5th Cir. 2010), *modified on other grounds on denial of reh'g*, 622 F.3d 383 (5th Cir.), *and cert. denied*, 131 S. Ct. 620 (2010).

Here, the facts the Rangers knew supported the stop in two ways. First, the stop was reasonable based on the Rangers' reasonable belief that the car was speeding. Plaintiffs attempt to frustrate summary judgment by pointing to their own conclusory assertions that the car was not speeding. *See* Opp'n at 4. But Fourth Amendment reasonableness and qualified immunity hinge on the facts known to the *officers*. *See Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001); *United States v. DeLeon-Reyna*, 930 F.2d 396, 400 (5th Cir. 1991) (en banc) (per curiam). If an officer makes a reasonable mistake, or if he is relying on mistaken information received from other officers, an action is still reasonable under the Fourth Amendment, and qualified immunity still applies. *See Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305-06 (5th Cir. 2004); *United States v. Armendariz-Mata*, 949 F.2d 151, 153 (5th Cir. 1991).

Ranger Basak judged the car to be speeding by sight, which he is trained and certified to do with an accuracy within five miles per hour of the actual speed. Basak Decl. ¶ 8 (App'x at 22). He also received a reading from his front-facing radar showing the car was traveling above the speed limit. *Id.* Contrary to Plaintiffs' repeated misstatements of the record, *see* Opp'n at 4-5, 13, contemporaneous records corroborate Ranger Basak's testimony; among the evidence Plaintiffs themselves submitted is a dispatch transcript reflecting a contemporaneous radio transmission from Ranger Basak that the car "just passed [him] going 54 mph in a 45 mph zone, . . . weaving in [the] lane." (ECF No. 39-1 at 21.). Even if Ranger Basak's observations were wrong — and Plaintiffs' conclusory assertions hardly prove they are — Plaintiffs have not shown Ranger Basak's judgment was unreasonable based on the information he received.

Moreover, Ranger Basak's testimony cannot be brushed aside as Plaintiffs suggest. The cases they rely on in discussing the summary judgment standard, *see* Opp'n at 2, hold that summary judgment is often not appropriate when intent or state of mind is at issue. *See Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265-66 (5th Cir. 1991); *Magill v. Gulf & W. Inds.*, 736 F.2d 976, 979 (4th Cir. 1984); *Morrison v. Nissan Co.*, 601 F.2d 139, 141 (4th Cir. 1979). Intent and state of mind are irrelevant to the Fourth Amendment. *al-Kidd*, 131 S. Ct. at 2080. Rather, when the issue is whether a defendant had a reasonable belief that wrongdoing has occurred, a plaintiff cannot avoid summary judgment through his own self-serving and conclusory claims of innocence. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010). Here, Plaintiffs offer nothing more. Accordingly, Plaintiffs' conclusory denials that the car was speeding cannot carry their burden — and in a qualified immunity case, it is their burden, *see Brown*, 623 F.3d at 253 — to show a genuine issue of material fact.

In any event, even if Plaintiffs' conclusory denials that the car was speeding could frustrate Ranger Basak's assertion of qualified immunity, the other Rangers would still be entitled to qualified immunity. The other Rangers were entitled to rely on Ranger Basak's report. *See Johnson*, 379 F.3d at 305-06; *Armendariz-Mata*, 949 F.2d at 153. As Rangers Khan and Trester explained, they did so. *See* Khan Decl. ¶ 7 (App'x at 27); Trester Decl. ¶ 7 (App'x at 37). And Rangers Sikes and Spier were not even on the scene when the car stopped. *See* Sikes Decl.

Reply in Support of Park Rangers' Motion for Summary Judgment            3

¶¶ 10-11 (App'x at 31); Spier Decl. ¶ 9 (App'x at 34). Because the facts known to the other Rangers supported the stop, they are entitled to qualified immunity, regardless of the accuracy of Ranger Basak's observations.

The stop was also justified at its inception by the alert the Rangers received from the Border Patrol that a fugitive was traveling through the Park. "'[A]n alert or BOLO report may provide the reasonable suspicion necessary to justify an investigatory stop.'" *United States v. Rodriguez*, 564 F.3d 735, 742 (5th Cir. 2009) (quoting *United States v. Gonzalez*, 190 F.3d 668, 672 (5th Cir. 1999)). Plaintiffs argue that "[t]he Rangers' stop [was] reasonable only if the issuance of the BOLO itself was reasonable," Opp'n at 5. But the question is not whether the underlying alert was correct or well-investigated; rather, the question is whether the Rangers reasonably relied on the alert. *See Johnson*, 379 F.3d at 305-06; *DeLeon-Reyna*, 930 F.2d at 400. When law enforcement officers receive a timely alert to the possible presence of a wanted felon from other officers, the law does not require them to re-investigate that alert before acting; rather, they are entitled to rely on the information. *See Armendariz-Mata*, 949 F.2d at 153.

None of Plaintiffs' arguments undermine the reasonableness of the Rangers' reliance on the alert they received from the Border Patrol. The alert identified a specific vehicle with a specific license plate that the Rangers verified before stopping the vehicle. *See* Fed. Defs.' Summary of Facts ("SOF") ¶ 30 (ECF No. 27-1). And although Tocho had committed his assaults several months before the stop, he was still wanted on those charges. *See* SOF ¶¶ 20, 22; *cf. Gonzalez*, 190 F.3d at 673 (rejecting argument that two-month delay rendered BOLO stale). Because the Rangers could reasonably rely on an alert they received from another law enforcement agency, they are entitled to qualified immunity for stopping the car regardless whether that alert was well-founded.

### B. The Rangers' subsequent actions were reasonably related to the circumstances that caused the stop.

Plaintiffs' criticism of how the Rangers conducted the stop also proceeds from a mistaken understanding of the Fourth Amendment. Relying on language from a plurality opinion, *see Florida v. Royer*, 460 U.S. 491, 500 (1983) (opinion of White, J.), Plaintiffs assert that officers must use the "least intrusive means" to resolve a traffic stop. Opp'n at 6. The Fifth Circuit has

rejected the idea that this language from *Royer* supports rigid rules "prescribing the scope, duration, and order" of a traffic stop. *United States v. Brigham*, 382 F.3d 500, 511 (5th Cir. 2004) (en banc). The lawfulness of a stop does not depend on "'unrealistic second-guessing'" about "'some alternative means by which the objectives of the police might have been accomplished.'" *Id.* (quoting *United States v. Sharpe*, 470 U.S. 675, 686-87 (1985)). Rather, the "relevant question" is "'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly.'" *Id.* (quoting *Sharpe*, 470 U.S. at 686).

Plaintiffs' various attacks on the Rangers' diligence are meritless. Plaintiffs express incredulity that the stop could reasonably have taken an hour. Opp'n at 7.[1] But "[t]here is . . . no constitutional stopwatch on traffic stops." *Brigham*, 382 F.3d at 511. And here, the stop was not unreasonably long under the circumstances. Once a car has been stopped, officers may require the car's occupants to get out, *see Maryland v. Wilson*, 519 U.S. 408, 412 (1997), question them, *see Brigham*, 382 F.3d at 507-08, run records checks, *Pack*, 612 F.3d at 362, and continue the stop if they develop reasonable suspicion of other wrongdoing, *see id.* Officers may accomplish these objectives while using techniques, such as the felony-stop techniques used here, to ensure their safety and the public's. *See Garza v. United States*, 881 F. Supp. 1099, 1101 (S.D. Tex. 1995). Based on reports suggesting that an aggressive fugitive might be present, the Rangers reasonably conducted a felony stop, which involved having each occupant get out of the car one-by-one and kneel to be handcuffed. *See id.*; *see also* SOF ¶¶ 36-39. Clearing the car required opening a trunk Plaintiffs admit was broken and checking material covered in a tarp, *see* Davila Decl. ¶¶ 13, 14 (ECF No. 38-1 at 12). The Rangers' discovery that Plaintiff Davila was driving on expired license (which he does not deny) and had been drinking (which he also does not deny) complicated resolution of the stop. *See* SOF ¶¶ 45, 50-54. In the end, the stop took no longer than was necessary to complete these tasks. *See id.* ¶ 59.

---

[1] Even the evidence submitted by Plaintiffs shows that less than an hour elapsed from the time Ranger Basak spotted the car speeding to the time the Rangers left the site of the stop. *See* ECF No. 39-1 at 22-24.

Reply in Support of Park Rangers' Motion for Summary Judgment                                    5

Plaintiffs quibble with the order in which Rangers ran records checks and conducted field sobriety tests. Opp'n at 7-8. But there is no "per se rule requiring an officer immediately to obtain the driver's license and registration information and initiate the relevant background checks before asking questions." *Brigham*, 382 F.3d at 511. And computerized license and registration checks "need not be pursued to the exclusion of, or in particular sequence with, other efficient means" of resolving a stop. *Id.* Moreover, neither questioning, records checks, nor the field sobriety test could reasonably have occurred until after the Rangers swept the car to ensure their safety. *Cf. United States v. Tellez*, 11 F.3d 530, 533 (5th Cir. 1993) (recognizing officers' interest in not putting themselves in vulnerable position when completing stop).

Finally, Plaintiffs suggest that the Rangers could not have been diligent because if they had, they would have recognized immediately from consulting Tocho's description that none of the three persons who got out of the car was Tocho. *See* Opp'n at 10, 21. The problem with this logic is that the Rangers *also* had to determine that *no one else* was in the car. For instance, in *Los Angeles County v. Rettele*, 550 U.S. 609, 613 (2007), plaintiffs challenged a search and detention as unreasonable because deputies detained them even though they were white and the suspects sought were African-American. The Supreme Court rejected the plaintiffs' argument as "unsound" because the deputies had no way of knowing that the suspects they sought were elsewhere in the house. *Id.* The Court also held that while the deputies ensured no one else was present, they could lawfully detain the white plaintiffs they had encountered first. *Id.* at 613-14. Similarly, the Rangers had no way of knowing until they had cleared the car — including the trunk and the materials Plaintiff Davila had covered with a tarp — that Tocho, a wanted felon with a history of aggression toward law enforcement, was not concealed there. Indeed, *not* finding Tocho among the car's three visible occupants would only have *increased* the Rangers' reasonable concerns that he might have been hiding. It is undisputed that the Rangers asked for, and then confirmed with photo identification cards, the identities of all three occupants after the car had been cleared. SOF ¶¶ 45-47, Davila Decl ¶¶ 17, 24 (ECF No. 38-1 at 4); Duarte Decl. ¶ 18 (ECF No. 38-1 at 23). Plaintiff's suggestion that the Rangers were less than diligent is, therefore, groundless.

### C. Plaintiffs' detention was not so clearly unreasonable as to deprive the Rangers of qualified immunity.

To proceed in this suit, Plaintiffs must show not just that the stop was unreasonable, but that it was so clearly unreasonable that *no* reasonable official could have believed the Rangers' actions were proper. *See Brown*, 623 F.3d at 273; *see also al-Kidd*, 131 S. Ct. at 2083 ("A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of the right [are] sufficiently clear' that *every* 'reasonable official would have understood that what he is doing violates that right.'") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (emphasis added).

Plaintiffs contend that "[i]t was clearly established at the time Plaintiffs' claims arose that officers could not unreasonably detain an individual." Opp'n at 3. This general contention is irrelevant; the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *al-Kidd*, 2011 WL 2119110, at *8. Thus, "[t]he general proposition . . . that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id.* Plaintiffs offer nothing more; even the case they rely on to "clearly establish" the law, *see* Opp'n at 3-4, recognizes the difficulty of applying the Fourth Amendment's reasonableness standard to particular factual situations:

> [T]he court must observe that Fourth Amendment issues are difficult and intricate for courts to resolve, as this opinion indicates. If the courts struggle, even after spending weeks analyzing fact situations and researching the law, it is clear that the struggles of law enforcement are even greater, since they are on the front lines trying to make instantaneous judgments, often under ambiguous circumstances.

*United States v. Alvarado-Ramirez*, 975 F. Supp. 906, 921 (W.D. Tex. 1997).[2] The Rangers, who had to make quick judgments about how to handle the possible presence of a wanted felon in an

---

[2] Plaintiffs misrepresent the facts and holding in *Alvarado-Ramirez* when they describe the court as holding that reasonable suspicion was lacking "without more than the agent's testimony that [the criminal defendant] was speeding," Opp'n at 3. In *Alvarado-Ramirez*, the court declared the stop unlawful because the agent conceded that he was *unsure* whether the criminal defendant was speeding, 975 F. Supp. at 910 n.3, and lacked authority to stop a car for speeding in any event, *see id.* at 918. In this case, Ranger Basak confirmed that the car was speeding by sight and by radar, *see* Basak Decl. ¶ 8 (App'x at 22), and there is no question that he and the other Rangers had authority to stop a car for speeding, *see* 5 U.S.C. § 8401(17)(A)(i)(I); 16 U.S.C. §§ 1a-6(b), 3; 36 C.F.R. § 4.21(c).

isolated area near an international border, made no clear missteps. Therefore, qualified immunity protects them from Plaintiffs' claims of unreasonable seizure.[3]

II. **THE RANGERS ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFFS' UNLAWFUL-SEARCH CLAIMS BECAUSE THE LIMITED PROTECTIVE SWEEP OF THE CAR DID NOT VIOLATE ANY CLEARLY ESTABLISHED FOURTH AMENDMENT RIGHTS.**

    A.    **Plaintiff Duarte lacks Fourth Amendment standing to challenge the sweep of the car.**

Plaintiff Duarte does not contest the general rule that a passenger in a vehicle has no expectation of privacy in a vehicle she does not own, and thus no Fourth Amendment standing to challenge a search of that vehicle, see *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). Rather, Plaintiff Duarte attempts to premise Fourth Amendment standing to challenge the Rangers' sweep of the car on three contentions, none of which is sufficient to establish standing. First, Plaintiff Duarte attempts to base standing on a purported "property interest in certain items within the vehicle," Opp'n at 14, including a "purse, apparel, and various items in a cooler." Opp'n at 15. Neither Plaintiff Duarte's declaration nor any other evidence identifies any item except the purse, which she concedes she gave the Rangers consent to retrieve and search for her identification. *See* Duarte Decl. ¶¶ 17-18 (ECF No. 38-1 at 23). But even if the evidence did show Duarte had belongings in the car, she does not acquire an expectation of privacy in the search of the car simply by placing belongings inside of it. *See United States v. Salvucci*, 448 U.S. 83, 92 (1980) ("We simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched."). Second, Plaintiff Duarte contends that she was "legitimately in the vehicle." Opp'n at 15. The Court in *Rakas* rejected the contention that permission of the owner to be in car vests a passenger with expectation of privacy. 439 U.S. at 148-49. Third, Plaintiff Duarte argues that she has standing to challenge the stop of the car and therefore has standing to challenge the search, too. But standing to challenge the stop of a vehicle is distinct from standing to challenge a search of that vehicle. *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003) ("[W]hile a passenger

---

[3] Plaintiffs arguments that the force used by the Rangers during the stop was excessive, *see* Opp'n at 8-9, are addressed in Part III.

of a stopped automobile does not have standing to challenge the search of a car, he does have standing to challenge the seizure of his person as unconstitutional.").

Even if Plaintiff could cobble together standing from some combination of these factors, the Rangers would still be entitled to qualified immunity. Qualified immunity protects government officials unless a right is so clear that "existing precedent" places the constitutional right asserted by a plaintiff "beyond debate." *al-Kidd*, 131 S. Ct. at 2083. And qualified immunity is always "assessed in light of the facts available to [the officer] at the time of his action." *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 614 (5th Cir. 2004) (internal quotation marks omitted). Plaintiff Duarte has not pointed to any cases that would remotely suggest that a passenger acquires standing simply because officers view or touch her belongings in the course of a search. Moreover, she points to no evidence that the Rangers could have recognized that any of the belongings (except the purse, which she gave consent to search) were hers. Without even standing, she cannot argue that any of her clearly established Fourth Amendment rights were violated. The Rangers are therefore entitled to qualified immunity from Plaintiff Duarte's unlawful-search claim.

**B.    The protective sweep did not violate Plaintiffs' clearly established Fourth Amendment rights.**

Plaintiffs' objections to the protective sweep misstate the circumstances under which law enforcement officers may lawfully perform a protective sweep of an automobile during a traffic stop. Plaintiffs rely on cases about protective sweeps of residences and other buildings. *See* Opp'n at 11 (citing *United States v. Gould*, 364 F.3d 578 (5th Cir. 2004) (en banc) (upholding protective sweep of trailer), *abrogated on other grounds*, *Kentucky v. King*, 131 S. Ct. 1849 (2011), and *United States v. Mata*, 517 F.3d 279 (5th Cir. 2008) (upholding protective sweep of commercial building)). But automobiles receive less protection, for "[t]he Fourth Amendment does not treat a motorist's car as his castle." *Illinois v. Lidster*, 540 U.S. 419, 424 (2004). A protective sweep of an automobile is valid under the Fourth Amendment "where the police

officer had an objective reason to fear for his safety or the safety of others." *United States v. Wallen*, 388 F.3d 161, 165 (5th Cir. 2004).[4]

The Rangers' had objective reasons to fear for their safety and the safety of others, and their sweep went no further than necessary to dispel that fear. The Rangers had stopped a car traveling toward a border crossing, and the car was associated with a wanted felon known to be aggressive toward law enforcement. SOF ¶¶ 15-17, 20, 22-23. They had no way of knowing, just because three visible passengers came out of the car, that no one else was concealed within. *See* Trester Decl. ¶ 11 (App'x at 37-38). Even crediting Plaintiffs' testimony that the Rangers removed items from the back seat, that measure would not have been unreasonable given the possibility that someone could have been concealed under those items. *See* Davila Decl. ¶ 13 (ECF No. 38-1 at 12). And even if the Rangers' opening of the trunk could be correctly characterized as "breaking into" it, Opp'n at 14, that measure was also reasonable, given the need to dispel concerns that a person might be concealed there and the (conceded) fact that the trunk's lock was broken, *see* Davila Decl. ¶ 14 (ECF No. 38-1 at 12). In sum, these reasonable measures would have violated no clearly established law.

Plaintiffs nonetheless point to *United States v. Green*, 324 F.3d 375 (5th Cir. 2003), in which the Fifth Circuit disapproved an automobile search after officers had already handcuffed an arrestee. *See* Opp'n at 13. But *Green* did not consider the law of protective sweeps; it addressed the standard for a search incident to arrest, a distinct legal justification for search. *Id.* at 378-79. Cases addressing protective sweeps have consistently held that officers may conduct a protective sweep even after a detainee has already been handcuffed. *See, e.g., Wallen*, 388 F.3d at 166; *United States v. Ibarra-Sanchez*, 203 F.3d 356, 357 (5th Cir. 2000). Moreover, *Green* did not involve a situation in which officers had reason to suspect that someone else might be concealed in the car they searched. Even if Plaintiffs were correct that they posed no objective threat to the Rangers after handcuffing, *but see Wallen*, 388 F.3d at 166, the Rangers still had to

---

[4] Even when the protective sweep of a home or building is at issue, officers need not articulate probable cause or even reasonable suspicion before performing a protective sweep of spaces immediately adjoining the place of arrest from which an attack could be launched. *See United States v. Charles*, 469 F.3d 402, 405 (5th Cir. 2006); *Gould*, 364 F.3d at 583 n.1

rule out the possibility that an aggressive, wanted felon was concealed in the vehicle. This concern rendered the sweep reasonable, and thus consistent with the Fourth Amendment.[5]

### III. THE RANGERS ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFFS' EXCESSIVE-FORCE CLAIMS BECAUSE THE USE OF FORCE WAS NOT CLEARLY EXCESSIVE IN THE SITUATION THE RANGERS CONFRONTED.

Although there are minor differences between the Rangers' accounts of the stop and Plaintiffs' accounts, none of those differences precludes summary judgment. Even on summary judgment, "[t]he court must measure the force used under the facts as a reasonable officer would perceive them, not necessarily against the historical facts." *Hill v. Carroll County, Miss.*, 587 F.3d 230, 234 (5th Cir. 2009). There are two reasons for this rule. First, under the Fourth Amendment standard for excessive force, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Second, in assessing qualified immunity, a court must address an officer's conduct in light of the "situation [that officer] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam).

The facts as a reasonable officer would perceive them were these: The Rangers had been told that they were stopping a car associated with Tocho Davila-Luna, a wanted fugitive. *See* SOF ¶ 20. The Rangers had been advised that Tocho had a recent history of fleeing from law enforcement and resisting attempts to detain him. *See id.* ¶ 22. And the stop took place on a road leading to the U.S.–Mexico border. *Id.* ¶ 23. Plaintiffs do not contest these facts. Thus, contrary to Plaintiffs' assertion to the contrary, Opp'n at 17, the Rangers had good reason to believe that someone in the car posed a threat to their safety.

Plaintiffs attempt to downplay the risk posed by Tocho. They observe that Tocho had committed assaults three months prior, Opp'n at 8, as if the passage of three months or Tocho's status as a fugitive somehow rendered him less dangerous. They also point out that he assaulted

---

[5] Plaintiffs' objections to the stop itself, which they reiterate in their objections to the protective sweep, Opp'n at 13-14, are addressed above in Part I. Plaintiffs' objections to the manner of their detention during the stop, which they also raise as an objection to the protective sweep, Opp'n at 14, are addressed next in Part III.

Reply in Support of Park Rangers' Motion for Summary Judgment          11

officers with a truck and his feet, rather than a gun, Opp'n at 8, 17. But officers may lawfully use felony-stop techniques if a stop is potentially dangerous even if the person stopped has not brandished a weapon. *See, e.g., Garza*, 881 F. Supp. at 1101 (felony stop justified by officers' mistaken belief that motorist failed to yield).

    Plaintiffs also attempt to downplay the difficulty of the stop by arguing that the Rangers had time to prepare for it. Opp'n at 20-21. But the fact that law enforcement officers have time to plan an operation does not mean that they need not make "'split-second judgments . . . about the amount of force that is necessary'" once the operation is underway. *See Johnson*, 379 F.3d at 305 (quoting *Graham*, 490 U.S. at 397, and applying its reasoning to pre-planned home search). And traffic stops are "especially fraught with danger to police officers." *Michigan v. Long*, 463 U.S. 1032, 1047 (1983).

    Given the facts the Rangers knew and the situation they confronted, none of the techniques Plaintiffs complain about was excessive, let alone clearly excessive. Even if, as Plaintiffs contend, the Rangers pointed guns at them during the stop, including after they were handcuffed, that use of force would not have been excessive. The Rangers could lawfully draw their weapons regardless whether Plaintiffs resisted or attempted to flee. *See United States v. Campbell*, 178 F.3d 345, 348-49 (5th Cir. 1999); *see also Reeves v. Churchich*, 484 F.3d 1244, 1260-61 (10th Cir. 2007). And they could continue pointing their weapons even after Plaintiffs had been handcuffed. *United States v. Sanders*, 994 F.2d 200, 204-05 (5th Cir. 1993). Plaintiffs do not dispute that the Rangers holstered their weapons once the car had been cleared. *Compare* SOF ¶ 44, *with* Davila Decl. ¶¶ 13-27 (ECF No. 38-1 at 12-13) (no mention of guns after car cleared); Duarte Decl. ¶¶ 13-23 (ECF No. 38-1 at 22-23) (same). While they were clearing the car, the Rangers would have been fully justified in pointing their weapons.

    Moreover, contrary to Plaintiffs' repeated suggestions, Opp'n at 8, 17, the Rangers did not need to meet the Texas statutory standard for the use of "deadly force" to draw or point their weapons. The Fifth Circuit has recognized "an important distinction" between "the *use* of force (e.g., firing a gun)" and "the *display* of force employed as a conditional threat to use actual force *if necessary*." *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1231 (5th Cir. 1988) (first two

emphases added); *accord Collins v. Nagle*, 892 F.2d 489, 497 (6th Cir. 1989). Under the Model Penal Code, which the federal courts have adopted in defining "deadly force," "[a] threat to cause death or serious bodily injury, by the production of a weapon . . . , so long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute deadly force." Model Penal Code § 3.11(2); *see Robinette v. Barnes*, 854 F.2d 909, 912 (6th Cir. 1988) (adopting Model Code definition); *Ryder v. City of Topeka*, 814 F.2d 1412, 1417 n.11 (10th Cir. 1987) (listing courts of appeals adopting Model Code definition). Even the Texas provisions Plaintiffs rely on do not define pointing a gun as "deadly force." *See* Tex. Penal Code § 9.04 ("For purposes of this section, a threat to cause death or serious bodily injury by the production of a weapon or otherwise, as long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute the use of deadly force."). Plaintiffs' focus on "deadly force," therefore, is misplaced.

Similarly, telling Plaintiffs to kneel to be handcuffed was not clearly excessive even if, as Plaintiff Davila now claims, he also had to lie face-down. Even if a detainee is cooperative, a law-enforcement officer can still tell him to lie face down to be handcuffed. *See Campbell*, 178 F.3d at 348-49; *Sanders*, 994 F.2d at 207. A law enforcement officer need not, as Plaintiffs imply, Opp'n at 19, find a weapon first; in a potentially dangerous situation, having a person lie face down is the safest way for officers to approach him, handcuff him, and ensure he has no weapons. *See Campbell*, 178 F.3d at 348-49. Once the car was clear, the Rangers seated the Plaintiffs in Ranger vehicles. *See* SOF ¶ 41; Davila Decl. ¶ 18 (ECF No. 38-1 at 13); Duarte Decl. ¶ 16 (ECF No. 38-1 at 22).

Plaintiffs' remaining allegations of excessive force are that Plaintiff Duarte's "arms ached" from being handcuffed during the stop and that she experienced discomfort from having to kneel next to a muffler. *See* Opp'n at 18. These injuries are *de minimis* and therefore insufficient to support an excessive force claim. Discomfort from handcuffing is a *de minimis* injury. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). And although a minor injury can be more than *de minimis* when there is no apparent explanation but malice, *see Williams v. Bramer*, 186 F.3d 633, 634 (5th Cir. 1999), the record here shows that if Plaintiff Duarte was

near a muffler, that placement was nothing more than an oversight; when Plaintiff complained, a Ranger moved her, *see* Duarte Decl. ¶ 14 (ECF No. 38-1 at 22).

Finally, even if this Court were to determine in hindsight that the Rangers were overly cautious, qualified immunity would still protect them. The border between excessive and acceptable force is "hazy." *Brosseau*, 543 U.S. at 198. Therefore, "[e]xcessive force incidents are highly fact-specific and without cases squarely on point, officers receive the protection of qualified immunity." *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 383 (5th Cir. 2009). Plaintiffs point to no case holding that law enforcement officers may not use felony-stop techniques in stopping a car associated with a violent fugitive. Therefore, Plaintiffs have failed to overcome the defense of qualified immunity.

## CONCLUSION

No one is happy that this stop failed to uncover the wanted felon, least of all the Rangers, who gain nothing from expending their effort and attention on a nerve-wracking and ultimately fruitless operation. But to rule in favor of the Rangers, this Court need not find that Plaintiff's experience was unobjectionable. Nor need the Court determine, in hindsight, that there was no other conceivable way to address the situation. To find the Rangers immune, this Court need only find that, given what the Rangers knew and the situation they faced, their approach was not so plainly wrong that its unconstitutionality was beyond debate. The undisputed record amply supports that finding. Therefore, this Court should grant the Rangers summary judgment.

                                                                      Respectfully submitted,

                                                                      TONY WEST
                                                                      Assistant Attorney General

                                                                      C. SALVATORE D'ALESSIO
                                                                      Acting Director, Constitutional Torts Staff

                                                                      RICHARD MONTAGUE
                                                                      Senior Trial Counsel, Constitutional Torts Staff

/s/ _____
ZACHARY RICHTER, Texas Bar No. 24041773
Trial Attorney, Constitutional Torts Staff
United States Department of Justice, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202)616-4199 (phone)
(202)616-4314 (fax)

*Attorneys for the United States, Iftikhar Khan, Phil Basak, Brian L. Sikes, Mark Spier & Blake Trester*

# CERTIFICATE OF SERVICE

I certify that on June 17, 2011, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notification to

| | | |
|---|---|---|
| Javier Saenz | Amanda Jane Chisholm | Susan L. Watson |
| Texas Rio Grande Legal Aid | Texas RioGrande Legal Aid | Texas RioGrande Legal Aid |
| 1331 Texas Ave | 114 North 6th Street | 311 Plus Park Blvd., Suite 135 |
| El Paso, TX 79901 | Alpine, TX 79830 | Nashville, TN 37217 |
| jsaenz@trla.org | achisholm@trla.org | swatson@trla.org. |

/s/ _____
Zachary Richter